UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EDWARD EARL JOHNSON, | ) |
| Plaintiff, | ) ) ) |
| v. | )  Case No. 12-CV-0481-CVE-FHM |
| THE CITY OF TULSA, a municipal corporation, and ERIC J. HILL, individually and in his official capacity, | ) ) ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

Now before the Court is the City of Tulsa's Motion to Dismiss Plaintiff's Complaint and Brief in Support (Dkt. # 4). The City of Tulsa (the City) argues that plaintiff has failed to state a claim upon which relief can be granted, and it seeks dismissal of plaintiff's complaint.[1] Plaintiff responds that he has adequately alleged a claim against the City under 42 U.S.C. § 1983, and he also argues that the City is liable for Hill's alleged misconduct under the Oklahoma Governmental Tort Claims Act, OKLA. STAT. tit. 51, § 151 et seq. (GTCA).

**I.**

On December 28, 2008, Tulsa Police Department (TPD) Officer Hill arrested Edward Earl Johnson. Dkt. # 2-2, at 2. Johnson alleges that Hill made false statements in the arrest report and that Hill knew the statements were false. Id. Johnson states that "[d]espite his plea of innocence, the prosecution of the Plaintiff continued until the date of his scheduled jury trial." Id. Johnson pled

---

[1] Plaintiff has asserted one claim solely against defendant Eric J. Hill and, if the City's motion to dismiss is granted, there will still be a claim pending. Thus, the Court will not dismiss the complaint in its entirety if the City's motion to dismiss is granted.

no contest to a felony charge of possession of controlled drug, and he was sentenced to 10 years imprisonment. Id. The sentence of imprisonment was suspended, and Johnson was placed on probation and was supervised by the Oklahoma Department of Corrections. Id. Johnson states that he filed an application for post-conviction relief based on Hill's misconduct, and Johnson's conviction and sentence were vacated.[2] Dkt. # 6, at 2.

On August 9, 2012, Johnson filed this case against Hill and the City, alleging § 1983 claims against Hill and the City (claims for relief one and two) and negligence claims against the City (claims for relief three and four). Johnson claims that Hill made numerous false arrests and that "upon learning of widespread transgressions of its police officers over many years, the City ignored its duty to remedy the continuing deprivations of civil rights of Plaintiff . . . ." Dkt. # 2, at 7. Johnson seeks actual and punitive damages for the alleged violations of his constitutional rights, and he requests the maximum damages of $175,000 for the City's alleged negligence.

**II.**

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the

---

[2]  Johnson's response to the City's motion to dismiss contains additional factual allegations but, when reviewing the City's motion to dismiss, the Court's review is limited to the allegations of plaintiff's petition. The Court includes this fact only as background information, because the claims of false arrest and deprivation of constitutional rights depend on this allegation. Should Johnson choose to file an amended complaint, he will be required to state his claims more clearly and ensure that he alleges all necessary facts without reference to a supplemental filing, such as a response to a motion to dismiss.

factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

The City asks the Court to dismiss plaintiff's claims against it for failure to state a claim upon which relief can be granted. As to plaintiff's § 1983 claim, the City argues that plaintiff has failed to identify an unconstitutional policy or practice that would support a § 1983 claim for municipal liability. To the extent that plaintiff is alleging a § 1983 claim based on false arrest, the City argues that plaintiff's claim for false arrest is barred by the statute of limitations. Dkt. # 4, at 3-7. The City also argues that it cannot be held liable under the GTCA for Hill's alleged misconduct, because Hill was acting outside of the scope of his employment and a municipality cannot be held liable under the GTCA for negligent supervision or failure to train.

**A.**

The City argues that plaintiff's § 1983 claim against it suffers from two defects. First, the City argues that plaintiff has not identified a municipal policy or custom that violated any provision of the United States Constitution; thus, he has not adequately alleged a § 1983 claim against the City. Dkt. # 4, at 3-5. Second, the City argues that plaintiff's § 1983 claim is time-barred to the extent it is based on a false arrest theory. Id. at 6-7.

Section 1983 provides a cause of action against state actors for violation of a plaintiff's federal rights. Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Suiters, 499 F.3d 1228, 1232-33 (10th Cir. 2007). In the case of a municipal entity, the "under color of state law" element requires that the constitutional deprivation occurred pursuant to official policy or custom. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). A municipal entity may be held liable for an act it has officially sanctioned, or for the actions of an official with final policymaking authority. Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 482-83 (1986); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 127-28 (1988).

Plaintiff alleges that the City "has established a policy, practice, pattern, and/or custom of allowing its police officers to deprive citizens of the their Constitutional rights." Dkt. # 2-2, at 4. However, plaintiff offers no specific allegations describing the alleged policy or how the constitutional rights of citizens have been violated. The Tenth Circuit has stated that:

4

> Since *Monell*, the Supreme Court has "consistently refused to hold municipalities liable under a theory of respondeat superior " but nonetheless has imposed liability upon municipalities when the enforcement of their policies or customs by their employees causes a deprivation of a person's federally protected rights. Therefore, the Court "require[s] a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Monell* and its progeny clearly stand for the proposition that the very language of § 1983 provides for the imposition of liability where there exists an "affirmative" or "direct causal" link between a municipal person's adoption or implementation of a policy and a deprivation of federally protected rights, and that imposing liability upon such a basis does not implicate respondeat superior. Nothing in *Iqbal* contradicts this longstanding interpretation of § 1983's language.

Dodds v. Richardson, 614 F.3d 1185, 1202 (10th Cir. 2010) (citations omitted). Construing the allegations of the petition in favor of plaintiff, it appears that plaintiff is attempting to imply the existence of a municipal policy based on Hill's alleged false arrest of plaintiff. The petition contains no allegations suggesting that the City was actually aware of Hill's misconduct or that the City, by official practice, policy, or custom, sanctioned the wrongful arrest of citizens. Thus, plaintiff has not alleged a § 1983 claim against the City. The Court will allow plaintiff to file an amended complaint if he can identify a specific municipal policy, practice, or custom giving rise to a constitutional violation.

The City also argues that plaintiff's § 1983 claim is time-barred to the extent that he is alleging that he was falsely arrested. Section 1983 does not contain a statute of limitations, and the Tenth Circuit has held that a § 1983 claim arising in Oklahoma is governed by the two year statute limitations for "injury to the rights of another, not arising out of contract" under OKLA. STAT. tit. 12, § 95(3). Meade v. Grubbs, 841 F.2d 1512, 1522-23 (10th Cir. 1988). For the purpose of a false arrest claim, the statute of limitations begins to accrue when the false imprisonment ends. Wallace

v. Kato, 549 U.S. 384, 389-90 (2007). The false imprisonment is deemed to end when the person is released from custody without the filing of formal charges or when the imprisonment "becomes 'pursuant to [legal] process–when, for example, he is bound over by a magistrate or arraigned on charges.'" Mondragon v. Thompson, 519 F.3d 1078, 1082-83 (10th Cir. 2008) (quoting Wallace, 549 U.S. at 290)).

Plaintiff states that he was arrested on December 28, 2008, and that he pled no contest to the charges against him on June 15, 2009. Although the date of plaintiff's arraignment on state charges is not stated in the petition, it is clear that plaintiff's § 1983 claim is time-barred to the extent it is based on a false arrest. Even if the Court were to use the date of plaintiff's plea, his statute of limitations would have expired on June 15, 2011, and this case was filed on August 9, 2012. Plaintiff argues that the statute of limitations should be tolled from the date of his arrest to the date of the "final determination of the criminal action," because it would be impractical for a criminal defendant to file a false arrest claim while criminal proceedings are ongoing. Dkt. # 6, at 6. However, plaintiff's argument is supported by no legal authority, and Tenth Circuit and Supreme Court precedent clearly establish when the statute of limitations for a false arrest claim begins to accrue. Plaintiff's argument also improperly suggests that this application of the statute of limitations prohibits a wrongfully arrested person from bringing a § 1983 claim. Id. In Wallace, the Supreme Court explained that a false imprisonment claim is entirely distinct from a malicious prosecution claim, and a § 1983 claim based on malicious prosecution begins to accrue at a later date. Wallace, 549 U.S. at 390. Thus, plaintiff's § 1983 claim is dismissed as time-barred to the extent that the claim is based on an alleged false arrest, but the Court will grant plaintiff leave to file an amended complaint if he believes he can assert a § 1983 claim based on malicious prosecution.

6

**B.**

The City argues that it is not liable to plaintiff under the GTCA. As to plaintiff's third claim for relief, the City asserts that it is not liable for torts committed by its employees acting outside of the scope of their employment. Dkt. # 4, at 7. The City also claims that it cannot be held liable for failing to train or supervise its employees, because the City is exempt from liability for this type of claim. Id. at 8-9. Plaintiff responds that whether Hill was acting within the scope of his employment is a question of fact that must be resolved by a jury, and that he should be permitted to conduct discovery in support of his claim that the City failed to provide appropriate training or supervision to TPD officers. Dkt. # 6, at 6-8.

Under OKLA. STAT. tit. 51, § 153, the state or a political subdivision is liable "for loss resulting from its torts or the torts of its employees acting within the scope of their employment . . . ." The GTCA defines "scope of employment" to mean the "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . but shall not include corruption or fraud." OKLA. STAT. tit. 51, § 152(12). A municipality may be held liable for the conduct of a police officer if the police officer commits a tort within the scope of his employment, and this includes "abuses of lawful power by police officers." Tuffy's, Inc. v. City of Oklahoma City, 212 P.3d 1158, 1167 (Okla. 2009). Even if a police officer's actions at some point exceed the scope of employment, a municipality may still be held liable if a reasonable jury could find that the police officer was initially acting within the scope of employment. Id. However, a municipality is not liable if the police officer's actions constitute "a clearly unlawful usurpation of authority the officer does not rightfully possess." Id.

Plaintiff argues that he has alleged sufficient facts to suggest that Hill may have been acting within the scope of his employment, and that it should be left to a jury to determine whether Hill's actions were taken in the scope of his employment as a police officer. Dkt. # 6, at 7. However, the allegations of plaintiff's petition are premised on Hill's alleged "willful, arbitrary, malicious," and conscious-shocking false arrest of plaintiff. Plaintiff cites DeCorte v. Robinson, 969 P.2d 358 (Okla. 1998), for the proposition that a municipality is liable if a police officer initially acts within the scope of employment and later acts in bad faith. In DeCorte, an off-duty police officer initiated a high speed pursuit of a suspected drunk driver and allegedly used excessive force when arresting the driver. Id. at 360. The facts of DeCorte are distinguishable from this case. The allegations of the petition do not support an inference that Hill was ever attempting to make a lawful arrest, and plaintiff plainly alleges that his arrest was the result of "widespread transgressions" committed by TPD officers. In other words, plaintiff is alleging that Hill was not acting within his lawful authority at any time during plaintiff's arrest, and facts alleged in the petition would show "a clearly unlawful usurpation of authority the officer does not rightfully possess." Tuffy's, Inc., 212 P.2d at 1167. There are no allegations that Hill had or believed that he had a legitimate basis for arresting plaintiff, and plaintiff's third claim for relief should be dismissed.

Plaintiff has also alleged a negligence claim (fourth claim for relief) against the City based on its alleged failure to provide adequate training or supervision to TPD officers or to enact adequate policies to prevent unlawful conduct by TPD officers. Under OKLA. STAT. tit. 51, § 155(4), the state or a political subdivision is exempt from liability for claims arising out of "[a]doption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy .

8

. . ." This exemption clearly applies to plaintiff's negligence claim against the City to the extent that plaintiff is seeking to hold the City liable for negligently failing to enforce TPD regulations concerning lawful arrests and the issuance of search warrants. Dkt. # 2-2, at 6. The Oklahoma Supreme Court has not considered whether the alleged failure to provide training or supervision falls within this statutory exemption, but it has stated that the "state and political subdivisions enjoy immunity for the choice to adopt or enforce a law, the formulation of law enforcement policy, and the method by which policy is implemented." State ex rel. Oklahoma Dep't of Public Safety v. Gurich, 238 P.3d 1, 4 (Okla. 2010). The Oklahoma Supreme Court has made a distinction between the adoption and enforcement of policies and "the daily implementation of policy," and a political subdivision may be held liable the action of an individual officer attempting to carry out a policy, while the political subdivision is immune from liability for decisions concerning the adoption or enforcement of a policy. Id. The decision to provide training more closely resembles the adoption and enforcement of a new policy, rather than the daily implementation of existing policy, and the Court finds that the City is exempt from liability for the alleged failure to provide training or supervision to TPD officers. Plaintiff's fourth claim for relief should be dismissed for failure to state a claim upon which relief can be granted.[3]

### IV.

The Court has reviewed the docket sheet and it does not appear that plaintiff has served Hill with a summons and copy of the petition. The Federal Rules of Civil Procedure require a plaintiff to serve each defendant within 120 days of filing the complaint, or the Court must dismiss the

---

[3] Should plaintiff choose to file an amended complaint, he is not granted leave to reallege his negligence claims against the City.

plaintiff's claim against any defendant who has not been served or permit the plaintiff to serve the defendant within a specified time. Fed. R. Civ. P. 4(m). If the plaintiff can show "good cause" for failing to serve the defendant within 120 days, the court shall allow the plaintiff additional time to effect service. The Tenth Circuit has created a two-step analysis to assist district courts when considering whether to grant a plaintiff's request for additional time:

> The preliminary inquiry to be made under Rule 4(m) is whether the plaintiff has shown good cause for the failure to timely effect service. In this regard, district courts should continue to follow the cases in this circuit that have guided that inquiry. If good cause is shown, the plaintiff is entitled to a mandatory extension of time. If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted. At that point the district court may in its discretion either dismiss the case without prejudice or extend the time for service.

Espinoza v. United States, 52 F.3d 838, 841 (10th Cir. 1995). Excuses for failing to serve a party, such as inadvertence, omission, or neglect, do not constitute good cause. In re Kirkland, 86 F.3d 172, 175 (10th Cir. 1996); Cox v. Sandia Corp., 941 F.2d 1124, 1125-26 (10th Cir. 1991). A court must consider a plaintiff's argument as to the existence of good cause and make specific findings on those arguments or the court's decision to deny additional time to effect service is "merely abuse of discretion and inconsistent with the spirit of the Federal Rules." ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1459 (10th Cir. 1995).

Under Rule 4(m), the Court may sua sponte dismiss a party that has not been timely served after giving the plaintiff an opportunity to show cause why the party has not been served. Sanders v. Southwestern Bell Telephone, L.P., 544 F.3d 1101, 1111 (10th Cir. 2008). Plaintiff is hereby placed on notice that the Court intends to dismiss Hill under Rule 4(m), and plaintiff is ordered to show cause why Hill has not been served.

**IT IS THEREFORE ORDERED** that the City of Tulsa's Motion to Dismiss Plaintiff's Complaint and Brief in Support (Dkt. # 4) is **granted**.  Plaintiff may file an amended complaint realleging his § 1983 claim against the City no later than **December 26, 2012**.

**IT IS FURTHER ORDERED** that, no later than **December 26, 2012**, plaintiff shall show good cause for his failure to serve Hill within 120 days of filing the petition.

**DATED** this 11th day of December, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE